**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Jason Hatcher,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:21cv1256 (AJT/IDD)** |
| | ) | |
| **Captain Townsend,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Virginia inmate Jason Hatcher ("Hatcher" or "Plaintiff") initiated this civil action pursuant to 42 U.S.C. § 1983, alleging Defendant Captain Townsend ("Townsend" or "Defendant") denied him constitutionally adequate medical care for skin cancer while he was housed at Meherrin River Regional Jail ("MRRJ").[1] The Defendant has filed a motion for summary judgment, with a supporting brief and an attachment (medical records). [Dkt. Nos. 56-57]. Plaintiff received the notice required by Local Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 58]. Plaintiff has responded. [Dkt. No. 44]. Accordingly, the pending motion is ripe for disposition. For the reasons that follow, Defendant's Motion for Summary Judgment must be granted, and the civil action will be dismissed.

**I. Undisputed Facts**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

[1] Defendants Willet, Wright, and Walker were previously dismissed from the case. [Dkt. Nos. 32, 43]. Plaintiff was granted leave to amend with respect to Willet, but Willet is not named in the Amended Complaint. The dismissals as to Wright and Walker were with prejudice. *McLean v. United States*, 566 F.3d 391 396-97 (4th Cir. 2009) (dismissal for failure to state a claim is presumed to be with prejudice) *abrogated on other grounds*, *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020). Meherrin River Regional Jail was also terminated from the case based on an apparent docketing error. [Dkt. Nos. 1-2, 12].

56(a). Defendant, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that Defendant contends are undisputed. Plaintiff has not complied with his obligations under those Rules by submitting statements of undisputed and disputed facts. Accordingly, Plaintiff has failed to rebut any of the facts set forth in Defendant's Motion for Summary Judgment, *Gholson v. Murray*, 953 F. Supp. 709, 714 (E.D. Va. 1997), and the Court accepts Defendant's statement of facts as true. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine facts in opposition to the motion.") (quoting E.D. Va. Loc. Civ. R. 56(B)), *aff'd*, 690 F. App'x 822 (4th Cir. 2017); *see also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).[2]

Accordingly, the following statement of uncontested facts is derived from a review of Defendant's statement of undisputed facts, and the record.

1. At all relevant times, Hatcher was an inmate at MRRJ. [Dkt. No. 37 at 3].

2. On July 23, 2021, Hatcher's medical treatment plan provided for daily dressing changes for a "nonhealing ulcer on his right upper back." [Dkt. No. 57-1 at 2-3].

[2] The record of admissible evidence includes Defendant's unobjected to exhibits. [Dkt. Nos. 43, 43-1, 43-2]. The Plaintiff's amended complaint is not sworn to. *See Goodman v. Diggs*, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit").

3. On December 30, 2021, Virginia Commonwealth University Community Memorial Hospital ("VCU") performed a biopsy on the lesion on Hatcher's back, and he was diagnosed with "nodular basal cell carcinoma" which "rarely Metastasize." [*Id.* at 3].[3]

4. On January 7, 2022, MRRJ corresponded with VCU regarding a referral for surgery. [*Id.*].

5. On February 23, 2022, Hatcher was seen off-site and describes the history of illness stating his medical condition "has been present as a lesion since 2016" and that Hatcher "state[d] that it has continued to grow since 2016, and ha[d] become more painful since his biopsy." Hatcher was also sent back to the MRRJ with supplies and an instruction for "daily wound care with mepilex borders." [*Id.* at 4].

6. On March 10, 2022, Hatcher told the medical unit he "needed bandages for the spot on his back," and Nurse Nicole Metz told him he would receive "large band-aids" at "pill call." [*Id.* at 5]. Hatcher was given a bandage at pill call on March 10, 2022. [*Id.* at 7].

7. On March 12, 2022, Hatcher sent a request form to medical regarding Captain Townsend taking his bandages, and his need for bandages for an upcoming surgery. [*Id.* at 6].

8. On March 10-12, 2022, Hatcher was seen by medical for a daily "Dressing change" regarding the lesion on his back. [*Id.* at 7-8]. The records indicate that the appointments for the daily wound care and dressing changes was entered in the system at "7:36 pm" on February 23, 2022, and the status for March 10-12, 2022 is noted as "Completed." [*Id.*].

[3] "Basal cell carcinoma is a type of skin cancer … [that] often appears as a slightly transparent bump on the skin [and] … occurs most often on areas of the skin that are exposed to the sun, such as your head and neck [and] … [is] thought to be caused by long-term exposure to ultraviolet (UV) radiation from sunlight." Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/basal-cell-carcinoma/symptoms-causes/syc-20354187 (last viewed May 3, 2023).

9. On March 13, 2022, Hatcher had a dressing change scheduled that was rescheduled and then later that day the status was changed to "Completed." [*Id.* at 8, 17-18].

10. On March 14, 2022, Hatcher was seen for mental health counseling. [*Id.* at 18].

11. On March 15, 2022, Hatcher's dressing was changed and Dr. Qing Liu modified Hatcher's treatment plan and authorized a "plain dressing over the lesion [on] the back, dressing change every other day x 14 days, then reassess by MD." [*Id.* at 9, 19].

12. After Townsend confiscated Hatcher's bandages on March 12, 2022, Hatcher was seen by medical 9 times (March 13- 15, 17, 21, 23, 25, and 28-29, 2022) preceding his surgery on March 30, 2022. [*Id.* at 17-28].[4]

13. On March 25, 2022, Hatcher filed a "NEW Sick Call Request" stating he "need[ed] to see the doctor" because "the area on [his] back [was] getting bigger and need[ed] bandages." [*Id.* at 25].

14. That same day, Hatcher executed a Keep on Person Contract ("KOP") in which he acknowledge "only medications that are approved for KOP and ordered by the facility physicians will qualify." [*Id.* at 11].

15. The KOP allowed Hatcher to keep "Chlorhexidine Gluconate and 10 bandages – 4x4s." on his person.[5] [*Id.*].

16. The bandages and antiseptic allowed for cleaning and dressing the unhealing ulcer on his upper right back, until his corrective surgery, five days later. [*Id.* at 13].

---

[4] Hatcher's medical records indicate that there were appointments on several other days that were apparently canceled because of a lockdown, or the appointment was "deleted" or "not completed" (which was marked with a "N/A"). *See, e.g.,* Dkt. No. 57-1 at 21, 22 (March 19 and 20, 2022).

[5] Chlorhexidine Gluconate is an antiseptic used for cleaning wounds. https://www.drugs.com/mtm/dyna-hex.html (last visited on May 3, 2023).

17. On March 30, 2022, Hatcher had surgery at VCU to remove the basal cell carcinoma on his back. [*Id.* at 13].

18. On March 30, 2022, VCU personnel informed Kimberly Green, a medical staff member at MRRJ, that Hatcher's wound dressing could be removed at 5:00 P.M. the next day, March 31, 2022, and Hatcher's wound "[did] not need to be covered after [the] dressing [was] removed," and he could "shower tomorrow as well." [*Id.* at 13].

19. On March 31, 2022, the day after Hatcher's surgery, he had a follow up appointment in the medical unit with nurse Nicole Metz. [*Id.* at 14].

20. At his March 31, 2022 appointment, Nurse Metz covered Hatcher's wound with "two non-stick pads side by side, covered by an ABDpad,[6] and secured with medical tape" because she noted a "small area on lower side of wound [did] seem to have some separation with surgical glue but [did] not look irritated and no blood or drainage noted. Patient given a KOP for same." [*Id.* at 14].

21. At that appointment, Hatcher executed another KOP which "allowed [him] to keep approved medical item(s) in [his] possession." [*Id.* at 15]. The KOP allowed Hatcher to keep "4 non-adherent pad[s] [and] 2 abdominal pads" on this person. [*Id.*].

22. On April 2, 2022, Hatcher returned to medical. He was seen by Nurse Metz whose notes state the, "area of previous dehiscence has some clotted blood but does not appear to be open or have any active drainage. [Metz] cleaned the area and instructed [Hatcher] to be careful with movements (*i.e.*, twisting to inspect the wound in the mirror) and not to 'scrub' the area in the

[6] Shorthand for "abdominal pad" which are used for large wounds or those which require high absorbency. https://www.vitalitymedical.com/abd-dressings.html (last visited on May 3, 2023).

shower [and] reminded [Hatcher] that [his] physician stated the wound can stay open to air at this time." [*Id.* at 14].

23. On May 19, 2022, Hatcher was transferred to Nottoway Correctional Center. [*Id.* at 16].

**II. Standard of Review**

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The essence of the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to the jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. After that required showing, however, the party opposing the motion must set forth specific facts, supported by evidence, showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. The opposing party may not rest on the mere pleadings. *Celotex*, 477 U.S. at 324.

"In determining whether summary judgment is appropriate, courts determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 769 (4th Cir. 2003). "It is also true that 'the mere existence of some disputed facts does not require that a case go to trial', rather, '[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the

evidence offered to create a question of fact must be adequate to support a jury verdict.'" *Poole v. Pass*, 351 F.Supp.2d 473, 478 (E.D. Va. 2005) (quoting *Thompson Everett, Inc. v. Nat'l Cable Adver., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995)). A mere scintilla of proof will not prevent the entry of summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

**III. Deliberate Indifference**

To state a claim under Section 1983 for deliberate indifference to a serious medical need, "a prisoner must show that he had a serious medical need, and that officials knowingly disregarded that need and the substantial risk it posed." *Depaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citation omitted). For purposes of this motion, the Court assumes that Plaintiff had a serious medical need, which means he must provide evidence that the Defendant acted with deliberate indifference, *i.e.,* that the Defendant "had actual knowledge of [Hatcher's] serious medical needs and the related risks, but nevertheless disregarded them." *Id.* (citing *Scinto v. Stansberry*, 841 F.3d 219, 225-26 (4th Cir. 2016)).

Here, the MRRJ had a "Keep on Person" ("KOP") program for medications and medical supplies that allowed an inmate to keep medications or medical supplies on their person to facilitate the provision of medications and medical supplies within the institution by allowing inmates to be educated about the medications or medical supplies and then self-administer them. The KOP program at MRRJ required that the items had to be ordered by the "facility physician." [Dkt. No. 57-1 at 11]. Hatcher's medical records indicate that after his return on February 23, 2022, an order was entered into the MRRJ medical units records on February 23, 2022 at 7:36 p.m. indicating Hatcher was to be seen, daily, by medical to change his dressing. [*Id.* at 7]. The records indicate that Hatcher was seen in medical and had his bandage changed on March 10-13, 2022, and that on

March 15, 2022, the physician changed the order from daily to every other day. [*Id.* at 7, 9, 17-18].

Hatcher signed the KOP and in doing so acknowledged that he was not allowed to possess the bandages without a KOP. When Defendant Townsend confiscated the bandages on March 12, 2022, he was merely enforcing the jail policy, which has an obvious penological interest in keeping control of medications and medical supplies within the institution. Just as important, the undisputed record establishes that Hatcher was seen in the medical unit on March 12, 2022 and March 13, 2022 and had his dressing changed on each day. [Dkt. No. 57-1 at 17-18]. On March 14, 2022, the records do not indicate the dressing was changed and it appears his original appointment for a dressing change was modified to allow for mental health counseling. [*Id.* at 18]. On March 15, 2022, Hatcher's dressing was changed and the doctor modified the treatment plan and changed the order from daily dressing changes to every other day. [*Id.* at 9, 19].

In sum, the only date that Defendant Townsend interfered in any possible way was on March 12, 2022 when he confiscated the bandages from Hatcher; but the medical records indicate that Hatcher's bandage was charged on March 12, 2022, as well as the next three days, and that after March 15, 2022 Hatcher's bandage changes were switched by his doctor to every other day. Beginning on March 25, 2022, after Hatcher executed the first KOP, he was provided with cleansing solution and ten bandages. After March 31, 2022, Hatcher no longer needed to cover the surgical site.

The record does not indicate or support any inference that Townsend was aware that confiscating the bandages on March 12, 2022 could create a substantial risk of serious harm to Hatcher, especially when medical staff were changing his dressing on a daily basis. Deliberate indifference requires that a prison official "know[] of and disregard[] an excessive risk to inmate

health or safety," that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). There is no evidence that establishes Townsend knew that confiscating the unauthorized bandages from Hatcher created any risk, much less an excessive risk, to Hatcher. Consequently, there was no basis for Townsend to have drawn the necessary inference that he created a substantial risk of serious harm to Hatcher. To the contrary, the evidence establishes that Hatcher had virtually unlimited daily access to medical personnel during the month of March 2022, and that medical personnel routinely changed Hatcher's dressing during that same time period. This isolated incident of confiscating unauthorized bandages because there was no KOP Contract executed does not amount to a serious deprivation sufficient to violate Hatcher's constitutional rights. Therefore, the undisputed material facts show Hatcher cannot establish an Eighth Amendment claim of deliberate indifference, and the Defendant's Motion for Summary Judgment will be granted.

Because the evidence establishes that Townsend did not violate Hatcher's Eight Amendment rights, the Court need not reach the remainder of Townsend's arguments.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. No. 56] must be granted. An appropriate order will issue alongside this memorandum opinion.

Alexandria, Virginia
May 3, 2023

Anthony J. Trenga
Senior U.S. District Judge